OLDHAM, EXECUTRIX, *v.* WRIGHT, TRUSTEE.

4-6436                                         155 S. W. 2d 50

Opinion delivered October 27, 1941.

*Nathan Schoenfeld* and *Carmichael & Hendricks,* for appellant.

*Walls & Walls,* for appellee.

GRIFFIN SMITH, C. J.   The appeal is from an order directing Mrs. Lillian M. Oldham, as executrix of the estate of W. K. Oldham, to pay R. S. Boyd, receiver, $550.

The proceedings were brought in a suit originally instituted by Moorhead Wright, trustee, against W. K. Oldham and others to foreclose a mortgage. While foreclosure was pending (January 27, 1936) Boyd was made

receiver. In March of the same year he rented the lands to Oldham for one-fourth of the cotton, ". . . subject to the government contract thereon, and $4 per acre for all tillable land that is not planted to cotton."

March 10, 1936, the contract was approved by the chancery court, with authorization to the receiver to waive the 1936 rents in order to aid Oldham in financing his operations. Oldham rented the land for 1937 and had intended to use it during 1938. Having made partial default in payment of rents, Oldham (March 28, 1938) assigned to the receiver the anticipated government payment.[1] A court order contains recitals shown in the footnote.[2]

It appears that between 1920 and 1924, W. K. Oldham deeded certain lands to his daughter, Lillian. At the time of her father's death in 1938, Miss Oldham was engaged in farming operations. Farming equipment of considerable value[3] was from time to time mortgaged by W. K. Oldham. After his death the daughter claimed this property. The widow contends she did not receive anything from the estate. Insurance was payable to the daughter.

Appellant, as administratrix, contends the government payments[4] were not assignable. As the widow, she claims $300 under § 80 of Pope's Digest.

Payments made to farmers on account of 1937 operations were authorized by congress under the Soil

[1] Ch. 3-B, Soil Conservation and Domestic Allotment Act, §§ 590, 590h, Title 16, U. S. C. A. (b) (c) (d) (e) (f). [But see subsection (g), page 420.]

[2] "Under the contract made with the receiver, W. K. Oldham was to pay said receiver, for the use of said lands for the year 1937, $4 per acre for all of said land, estimated to be 137.50 acres, in a state of cultivation. It appears that Oldham will receive rents from the government, or subsidy, and desires to pay the rent on said 137.50 acres out of said government subsidy, amounting to $550. . . . The . . . court doth order that the county agent of Lonoke county notify the government that the said check for said subsidy . . . be made payable to W. K. Oldham and R. S. Boyd, receiver; and if this cannot be done, that . . . the subsidy check be forwarded to Albert G. Sexton, chancery clerk, at Lonoke, for final settlement in the above matter." [There was the following indorsement: "I hereby authorize the county agent to comply with the above order." The notation was signed by Oldham.]

[3] One estimate, apparently not disputed, was $2,500.

[4] Total amount for 1937, $1,211.

Conservation Act, as amended. Subsection (f) of Southern Regional Bulletin 101, part III, provides: "Any share of payment shall be computed and paid without regard to questions of title under state law, without deduction of claims for advances, and without regard to any claim or lien against the crop or proceeds thereof in favor of the owner or any other creditor."

Through oversight an agent paid Mrs. Oldham, as executrix, the item of $550.

We do not believe congress, in authorizing the secretary of agriculture to promulgate rules, intended such rules should exceed the express authority given, or that necessarily implied from the purpose to be served. The Acts of congress do not declare assignments to be void, nor do the regulations go that far. The clear intent was that the government should be protected, and that the department of agriculture should not be harassed in those cases where checks were delivered in disregard of assignments.

In the instant case it is said in appellees' brief that at the insistence of Oldham and his attorneys the court authorized the receiver to permit Oldham to take $550 realized from the sale of cotton and use it in payment of other debts. Under this statement of fact Oldham, at the time such authority was granted, received the equivalent of the government's prospective payment of $550, and applied the money to the discharge of obligations incurred in producing and harvesting the 1937 crop, or in preparing for 1938. In equity Oldham's interest in the government fund ended with the assignment. It necessarily follows that the widow had no interest in something her husband had disposed of. Neither as executrix nor as a widow could Mrs. Oldham's interest in the subject-matter be greater than that of the assignor.

Affirmed.